IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:12-CV-359-FL

| | | |
|---|---|---|
| THERESA LYNN MYRICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff Theresa Lynn Myrick ("plaintiff") challenges the final decision of defendant Acting Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") benefits on the grounds that she is not disabled. The case is before the court on the parties' motions for judgment on the pleadings (D.E. 27, 29). Both filed memoranda in support of their respective motions. (D.E. 28, 30). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* Minute Entry dated 26 August 2013). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the Commissioner's final decision be affirmed.

I.      BACKGROUND

A.      Case History

Plaintiff filed an application for SSI benefits on 13 April 2010 alleging the onset of disability on 15 May 2007. Transcript of Proceedings ("Tr.") 10. The application was denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 10. On 6 September 2011, a video hearing was held before an Administrative Law Judge ("ALJ"). Tr. 24-

52. The ALJ issued a decision denying plaintiff's claim on 21 September 2011. Tr. 10-19. Plaintiff timely requested review by the Appeals Council. Tr. 144-45. The Appeals Council denied the request for review on 31 October 2012. Tr. 1-6. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 416.1481. Plaintiff commenced this proceeding for judicial review on 31 December 2012, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). (*See In Forma Pauperis* Mot. (D.E. 1); Order Allowing Mot. (D.E. 4); Compl. (D.E. 5)).

## B. Standards for Disability

The Social Security Act ("Act") defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). "[A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

The disability regulations under the Act ("Regulations") provide the following five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

(ii) At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["listings"] and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work.  If you can make an adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled.  . . . .

20 C.F.R. § 416.920(a)(4)(i)-(iv).

The burden of proof and production rests with the claimant during the first four steps of the analysis.  *Pass*, 65 F.3d at 1203.  The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy.  *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."  20 C.F.R. § 416.923.  If a medically severe combination of impairments is found, the combined impact of those impairments must be considered throughout the disability determination process.  *Id.*

## C.    Findings of the ALJ

Plaintiff was 40 years old on the date the application for SSI benefits was filed and 41 years old on the date of the hearing.  *See* Tr. 17 ¶ 6.  She has a high school education.  Tr.  17 ¶ 7.  She has past relevant work as a cashier.  Tr. 17 ¶ 8; 48.

Applying the five-step analysis of 20 C.F.R. § 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since 13 April 2010, her application date.  Tr. 12 ¶ 1.  At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations, 20 C.F.R. § 416.920(c):  right knee impairment, right shoulder impairment,[1] and bipolar disorder.  Tr. 12 ¶ 2.  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or equals one of the listings.  Tr. 12 ¶ 3.

The ALJ next determined that plaintiff had the RFC to perform sedentary work,[2] subject to the following limitations:

> [T]he claimant can occasionally climb stairs or ramps, ladders, ropes or scaffolds, balance, kneel, crouch, crawl, and reach overhead.  She may frequently stoop. The claimant has the ability to perform simple, repetitive, routine tasks ["SRRT's"].  She is slow to adapt to changes so workplace changes should be gradually introduced and explained.  The claimant is restricted from interacting with the general public.

Tr. 14 ¶ 4.  Thus, the ALJ found plaintiff able to perform a limited range of unskilled, sedentary work.  *See Bennett v. Colvin*, No. 4:12–CV–152–FL, 2013 WL 4417605, at \*13 (E.D.N.C. 15

---

[1] According to plaintiff, the right shoulder injury resulted from her being struck by a car when walking across a road.  Tr., *e.g.*, 46, 244, 284, 291; *see also* Tr. 60, 74.  Plaintiff has reported to medical providers that the accident occurred on 23 March 2004.  Tr. 244, 291; *see also* Tr. 284 (record of 8 May 2009 visit stating that accident occurred about five years ago).

[2] "Specifically, the claimant is able to lift and carry up to 10 pounds occasionally and lesser amounts frequently, sit for 6 hours in an 8-hour day, and stand and walk occasionally."  Tr. 14 ¶ 4;  *see* 20 C.F.R. § 404.1567(a); *Dictionary of Occupational Titles* ("DOT"), app. C § IV.c, def. of "Sedentary Work."  (U.S. Dep't of Labor 4th ed. rev. 1991), http://  www.oalj.dol.gov/libdot htm (last visited 22 January 2014).   "Sedentary work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT.  *See* 20 C.F.R. § 404.1567.

Aug. 2013) ("SRRTs are a subset of unskilled work."); 20 C.F.R. § 416.968(a) ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.").

At step four, the ALJ found that plaintiff is unable to perform her past relevant work. Tr. 17 ¶ 5. At step five, the ALJ accepted the testimony of a vocational expert ("VE") and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of machine tender; assembler; and sorter. Tr. 17-18 ¶ 9. The ALJ accordingly concluded that plaintiff was not disabled. Tr. 18 ¶ 10.

## II.     DISCUSSION

### A.     Standard of Review

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See, e.g., Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales,* 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano,* 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

### B.    Plaintiff's Contentions

Plaintiff contends that the ALJ erred by failing to account for all of her impairments in determining both plaintiff's RFC and the hypothetical posed to the VE. The court will address each contention in turn below.

### C.    ALJ's RFC Determination

Plaintiff argues that the ALJ erred by failing to account adequately for limitations in overhead reaching with her right arm and to account at all for alleged limitations on handling (*i.e.*, gross manipulation) and fingering (*i.e.*, fine manipulation)[3] with her right, dominant hand in determining her RFC. The court finds no error.

---

[3] For the definitions of "handling" and "fingering," see, *e.g.*, Tr. 60 (physical RFC assessment included in initial disability determination explanation).

The ALJ herself delineates substantial evidence in the medical records supporting her determinations regarding plaintiff's right shoulder and hand:

> The claimant has been diagnosed with right shoulder pain. During a consultative examination in August 2010, she reported shoulder pain and was found to have reduced range of motion of her right shoulder, but was not diagnosed with shoulder impairment. (Exhibit 6F). *The claimant did not report right shoulder pain again until January 2011*. (Exhibits 7F, 9F). On presentation, the claimant reported increasing shoulder pain over the past 6 months. Examination showed some deltoid atrophy. She was noted to be extremely limited with painful range of motion. There was weakness of the rotator cuff noted and pain to palpation of the biceps tendon and AC joint. Xrays did not show any bony abnormalities but a large ossicle anterior to the humeral head. Her diagnosis was right shoulder pain, probable internal derangement. She was referred for an MRI. (Exhibit 14F). The claimant presented to West End Orthopaedic Clinic in March 2011. She presented with an MRI showing an intact rotator cuff with tendonitis, and possibly a ganglion or some labral damage. Examination showed her shoulder was sensitive to touch. She had reduced range of motion secondary to pain. *It was noted that she had severe atrophy of the deltoid but intact rotator cuff strength and good shoulder shrug. Her triceps were noted to be a little weak but biceps seemed okay*. Her grip strength was decreased and she complained of numbness in her fingers. She was able to move her neck normally and her left arm moved normally. *While the claimant also alleged fingering/hand numbness, a nerve conduction study from April 2011 was normal aside from absence of activity in the deltoid*. She was diagnosed with axillary neuropathy with no motor function in the deltoid but no other abnormalities were found. *It was noted that there were no obvious findings to explain symptoms radiating all the way down the entire arm*. (Exhibit 12F). *During an examination in May 2011, the claimant did not complain of right shoulder pain*. (Exhibit 13F).

Tr. 16 ¶ 4 (emphasis added).

Similarly, the medical consultants at both the initial and reconsideration levels of review determined in August 2010 (Tr. 60, 61) and December 2010 (Tr. 74) that plaintiff was unlimited in both handling and fingering. (The consultants also found plaintiff limited to occasional overhead reaching with the right arm. Tr. 60, 74.) The ALJ accorded the medical consultants' opinions "significant weight, as they are consistent with the other evidence of record." Tr. 17 ¶ 4.

The ALJ restricted plaintiff's RFC in direct response to her right arm pain, as well as her knee pain:

> Her exertional level and postural limitations were also reduced in deference to right knee and arm pain. However, the undersigned finds additional limitations unsupported by the evidence of record.

Tr. 17 ¶ 4.

Plaintiff cites to many of the same medical records as the ALJ, emphasizing the findings in them supportive of her allegations. The court finds no error, though, in the ALJ's assessment of this evidence.

Further support for the ALJ's determinations is found in the range of activities of daily living the ALJ found plaintiff able to perform. Tr. 15 ¶ 4. They include, according to plaintiff herself, handling personal hygiene independently, doing the dishes, and playing video games with her son. Tr. 13 ¶ 3; Tr. 15 ¶ 4. Such activities entail manual dexterity. Plaintiff also reported that she had been able to drive, which again is indicative of manual dexterity, although she eventually stopped because of knee pain. *See* Tr. 227, 236, 294.

In addition, as the ALJ noted, plaintiff's sister reported in May 2010 that plaintiff cooks as long as she does not have to stand for a long period. Tr. 17 ¶ 4. The sister did not identify reaching or using hands as activities affected by plaintiff's impairments. Tr. 183 ¶ 22.a.

Moreover, as the ALJ observed, plaintiff reported and medical records noted that at times she uses a cane when walking because of her right knee pain. Tr. 14 ¶ 4; 15 ¶ 4. There is no evidence that her alleged right hand impairment prevented her from grasping and otherwise manipulating the cane. *See* Tr., *e.g.*, 184, 262, 284, 294, 320.

Plaintiff argues that the ALJ failed to consider her alleged limitations in handling and fingering as purportedly required by Social Security Ruling 96-9p, 1996 WL 374185, at *8 (2

July 1996) (noting importance of manual dexterity of both hands to unskilled sedentary occupational base and erosion of that base if there are significant manipulative limitations). The contention is baseless.

As the foregoing discussion illustrates, the ALJ expressly discussed medical records relating to plaintiff's alleged right hand numbness and manipulative impairments. Tr. 16 ¶ 4. The ALJ also summarized plaintiff's testimony regarding the alleged impairments of her right hand:

> The claimant testified that she has trouble with her right, dominant hand going numb, she stated that she drops things, cannot use buttons or raise her arms to her head. She said that painkillers help but she cannot afford them. The claimant stated that she can lift/carry less than a gallon of milk with her right arm. She said that while she can lift with her left hand it is a struggle. She reported she can type on a computer but must use her left hand.

Tr. 14-15 ¶ 4.

The ALJ, of course, evaluated the credibility of these, as well as the other statements, by plaintiff. She found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . [RFC]." Tr. 15 ¶ 4. Plaintiff does not challenge the ALJ's credibility determination directly, and the court finds no error regarding it. *See Craig*, 76 F.3d at 593–96; 20 C.F.R. § 416.929(a)-(c); Soc. Sec. R. 96–7p, 1996 WL 374186, at *1 n.1, *2 (2 July 1996).

Significantly, even if the ALJ had limited plaintiff to no overhead reaching, as proposed by plaintiff's counsel in a hypothetical to the VE, the VE testified to the effect that plaintiff would still have been able to perform all three occupations he otherwise found her able to perform. Tr. 50. The VE further testified that limiting plaintiff to only occasionally fingering

with the right hand, again as proposed by plaintiff's counsel in a hypothetical to the VE, would still have left her able to perform one of the three occupations, machine tender. Tr. 50. As discussed below, sufficient jobs in this occupation exist in the national economy to satisfy the Commissioner's burden at step five of the sequential analysis. Thus, even if the ALJ had accorded plaintiff's overhead reaching limitation and alleged fingering limitation more weight as plaintiff advocates, plaintiff has not demonstrated that the outcome of the case would have been any different. Plaintiff has therefore failed to show that she was harmed by the ALJ's determinations regarding these limitations, even if they were to be deemed erroneous. *See Garner v. Astrue*, 436 Fed. Appx. 224, 226 n. (4th Cir. 2011) (applying *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

For this and the other reasons stated, the court concludes that the ALJ's RFC determination is supported by substantial evidence and based on proper legal standards. The court accordingly rejects plaintiff's challenge to it.

### D. ALJ's Hypothetical to the VE

Plaintiff alleges that the hypothetical the ALJ posed to the VE was legally deficient because it did not include her alleged limitation on handling and fingering with her right hand. The court finds no error.

A hypothetical question to a VE is proper if it adequately reflects a claimant's RFC for which the ALJ had sufficient evidence. *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005); *see also Fisher v. Barnhart*, 181 Fed. Appx. 359, 364-65 (4th Cir. 2006) ("[I]t is the claimant's functional capacity, not his clinical impairments, that the ALJ must relate to the vocational expert."). The ALJ's hypothetical here adequately tracks her RFC determination. Tr. 48, 49. The only deviation from the RFC is that the hypothetical specified that "any workplace changes

should be few," Tr. 48, not simply that such changes should be gradually introduced and explained, Tr. 14 ¶ 4. Plaintiff did not object to this deviation. Given the specification that changes be gradually introduced and explained, it may not constitute a material difference from the RFC. In any event, this deviation was not prejudicial to plaintiff because any effect it had would have been to restrict the occupational base more than the RFC did. *See Gill v. Colvin*, No. 7:12–CV–72–FL, 2013 WL 1817353, at *10 (E.D.N.C. 4 Mar. 2013), *adopted*, 2013 WL 1817227 (29 Apr. 2013); *Johnson v. Astrue*, No. 2:08–CV–51, 2009 WL 413299, at *23 (N.D. W. Va. 18 Feb. 2009); *see also Thomason v. Astrue*, No. TMD 08–3403, 2012 WL 707003, at *3 (D. Md. 2 Mar. 2012) ("Based on this hypothetical, the VE indeed testified as to various jobs Claimant could perform. In fact, the ALJ's hypothetical was even more restrictive. . . . Nevertheless, the VE testified as to several types of jobs Claimant could perform. . . . Accordingly, the ALJ's reference to seemingly less restrictive limitations is harmless.") (internal citations omitted).

As discussed, the ALJ's RFC determination is supported by substantial evidence. The ALJ's hypothetical to the VE was therefore proper.

Moreover, as discussed above, when plaintiff's counsel posed the same hypothetical to the VE as the ALJ but added the limitations of no overhead reaching with the right arm and occasional fingering with the right hand, the VE testified that plaintiff would still be able to perform the machine tender occupation. Tr. 50. He also testified that there are 1,126,000 jobs in this occupation in the United States, including 14,550 in North Carolina. Tr. 18, 49. This clearly constitutes a significant number of jobs in the national economy satisfying the Commissioner's burden at step five of the sequential analysis. The Fourth Circuit has held that a far lower number of jobs is significant for purposes of determining whether there is other work

available to a claimant at step five of the sequential analysis.  *See*, *e.g.*, *Hodges v. Apfel*, 203 F.3d 820 (Table), 2000 WL 121251, at *1 (4th Cir. 2000) (153 jobs); *Hyatt v. Apfel*, 153 F.3d 720 (Table), 1998 WL 480722, at *3 (4th Cir. 1998) (650 jobs); *Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (110 jobs).

The VE further testified that it was only the limitation on fingering, and not the ban on overhead reaching, that eliminated the other two occupations he found plaintiff otherwise able to perform.  Tr. 50.  Therefore, even with limitations like those plaintiff advocates, the record shows there were jobs available to plaintiff.  The court accordingly rejects plaintiff's challenge to the ALJ's hypothetical to the VE.

## III.    CONCLUSION

After careful consideration of the ALJ's decision, the court concludes that it is supported by substantial evidence of record and based on proper legal standards.  IT IS THEREFORE RECOMMENDED that the Commissioner's motion (D.E. 29) for judgment on the pleadings be ALLOWED, plaintiff's motion (D.E. 27) for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until 5 February 2014 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.  Any response to objections shall be filed within 14 days after service of the objections on the responding party.

This, the 22nd day of January 2014.

James E. Gates
United States Magistrate Judge